**IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| KELLOGG COMPANY, | ) |
| | ) |
|               Plaintiff, | ) |
| | )    Case No. _____ |
|   v. | ) |
| | ) |
| | ) |
| BCTGM INTERNATIONAL UNION, | ) |
| BCTGM LOCAL 3G, BCTGM LOCAL | ) |
| 50G, BCTGM LOCAL 252G, and | ) |
| BCTGM LOCAL 374G, | ) |
| | ) |
|               Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff Kellogg Company by and through its attorneys, for its Complaint and claims against Defendants states as follows:

### The Parties

1. Plaintiff Kellogg Company ("Kellogg") is a Michigan corporation having its principal place of business in Battle Creek, Michigan.

2. Kellogg manufactures breakfast cereal at plants throughout the United States, including at four Ready-to-Eat Cereal ("RTEC") facilities located in Battle Creek, Michigan, Omaha, Nebraska, Memphis, Tennessee, and Lancaster, Pennsylvania ("the RTEC facilities").

3. Kellogg distributes breakfast cereal to customers and distributors throughout the United States from the RTEC facilities.

4. Kellogg is an employer in an industry affecting commerce as defined in Sections 501(1) and (3) and 2(2), (6) and (7) of the Labor Management Relations Act, 29 U.S.C.

1

§§ 142(1) and (3) and §§ 152(2), (6) and (7), and within the meaning of Section 301 of the Act, 29 U.S.C. §185.

5. Defendant Bakery, Confectionery, Tobacco Workers, and Grain Millers ("BCTGM") International Union is a labor organization that represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 152, with its principal office in Kensington, Maryland.

6. Defendant BCTGM Local 3G is a labor organization that represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 152, with its principal office in Battle Creek, Michigan.

7. Defendant BCTGM Local 50G is a labor organization that represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 152, with its principal office in Omaha, Nebraska.

8. Defendant BCTGM Local 252G is a labor organization that represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 152, with its principal office in Memphis, Tennessee.

9. Defendant BCTGM Local 374G is a labor organization that represents employees in an industry affecting commerce, as defined in 29 U.S.C. § 152, with its principal office in Lancaster, Pennsylvania.

10. The BCTGM International Union will be referred to as "the International Union" in this Complaint.

11. BCTGM Locals 3G, 50G, 252G, and 374G will collectively be referred to as "the Local Unions" in this Complaint.

**Relationship between the Local Unions and the International Union**

12. The Local Unions represent certain hourly employees in separate bargaining units at each of Kellogg's RTEC facilities. The Local Unions are affiliated with, and members of, the International Union.

13. Each Local Union has designated and authorized the International Union to act as its agent and on its behalf, including but not limited to, with respect to collective bargaining, negotiations, and labor contract administration for labor agreements between the Unions and Kellogg.

14. Upon joining the Local Union, each hourly employee also becomes a member of the International Union.

15. The Local Unions and their members are bound by the International Union's Constitution. The International Union's Constitution provides that:

> Membership in the International Union constitutes an exclusive and irrevocable designation of the International Union by each member to engage in collective bargaining on his/her behalf, and an undertaking to be bound by all decisions of the International Union affecting his/her status and duties as a union member.

(**Exhibit 1**, Article XIX, Section 4(b).)

16. Local Unions must create their own Bylaws, but those Bylaws are subject to, and must be consistent with, the International Constitution. (*Id.*, Article XVI, Section 5.)

17. The Local Unions must obtain permission from the International Union to engage in strike activity. The International Union's permission to strike is valid for a 30-day period and can be renewed upon application to the International Union's General Executive Board. (*Id.*, Article XIV, Section 1.)

**Jurisdiction and Venue**

18. This action arises under Section 301 of the Labor Management Relations Act of 1947 ("the Act"), 29 U.S.C. §185.

19. Kellogg seeks to recover damages and other available relief against Defendants for their ongoing breaches, repudiation, and threatened breach of a 2015 collective bargaining agreement. Because Kellogg is seeking both damages and all available equitable relief for Defendants' breaches of a labor agreement between Kellogg, the International Union, and the Local Unions, this Court has subject matter jurisdiction under 29 U.S.C. § 185(a).

20. This is also an action for a declaratory judgment. Kellogg also requests a judgment confirming that the parties' 2015 labor agreement previously negotiated and executed between Kellogg, the International Union and the Local Unions continues without change until at least October 5, 2021, and that the Defendants must abide by and honor the terms of that agreement. The Court has subject matter jurisdiction under 28 U.S.C. § 2201.

21. Venue is proper under 29 U.S.C. § 185(c) and 28 U.S.C. § 1391(b) because the International Union's and Local Unions' duly authorized officers and agents have engaged in, and continue to engage in, representing and acting for employee members with Kellogg Company in Battle Creek, Michigan.

22. This Court has personal jurisdiction over the International Union and the Local Unions for the same reasons that venue is proper under 29 U.S.C. § 185(c).

23. This Court also has personal jurisdiction over the International Union and the Local Unions because the Unions initiated negotiations for potential amendments to the existing 2015 labor agreement by sending their notice to Kellogg's Director of Labor Relations in Battle Creek, Michigan. Each of the Local Unions also authorized the International Union to

act as its agent, with Roger L. Miller, Vice President of the International Union acting as chief spokesperson for negotiations.

**The Parties' Collective Bargaining Relationship and Current "Master Agreement"**

24. Kellogg provides market-leading wages and benefits for its unionized employees working in each bargaining unit at its RTEC facilities.

25. The collective bargaining agreement for each location includes local agreements and a coordinated "Master Agreement." Kellogg is a party to separate local collective bargaining agreements with each of the Local Unions. These "Supplemental Agreements" cover terms and conditions of employments at each RTEC facility where each Local Union represents their respective group of bargaining unit employees. The International Union is not a party to any Supplemental Agreements between Kellogg and the Local Unions.

26. Beginning in 1969, however, Kellogg, the Local Unions, and the International Union, as the Local Unions' designated representative, began to negotiate a voluntary, coordinated agreement (the so-called "Master Agreement"). The Master Agreement covers only those subjects that the parties "specifically" agree to include in it and involves certain terms and conditions of employment that the parties agree to apply uniformly across all of the RTEC facilities, *e.g.* insurance benefits, vacation, scheduled holidays, and cost of living wage adjustments.

27. The parties have voluntarily negotiated successive Master Agreements since February 1969. In September 2012, the parties negotiated and executed a new Master Agreement that expired on October 3, 2015. (**Exhibit 2**.)

28. In July 2015, Kellogg, each Local Union, and the International Agreement negotiated and executed a new Master Agreement through a July 17, 2015 Master Memorandum of Agreement (MOA). (**Exhibit 3**.) The parties subsequently incorporated and signed off on the

5

previously agreed upon MOA changes in a new document reflecting the terms of their new 2015 Master Agreement. (**Exhibit 4** ("2015 Master Agreement").) The duration of the new 2015 was set for at least five years, subject to automatic annual continuation.

29. The 2015 Master Agreement includes the following prohibition on strikes and work stoppages:

> During the life of this Master Agreement no strike or work stoppage in connection with disputes arising hereunder shall be cause or sanctioned by the International Union, any of the Local Unions or by any member thereof; and no lockout shall be ordered by the Company in connection with such disputes.

(**Exhibit 4**, Section 10.01.)

30. Officers and agents of the International Union and each of the Local Unions travel to Kellogg's headquarters in Battle Creek, Michigan to represent members at grievance adjustment, arbitration and other hearings. This includes, but is not limited to, grievance, arbitration and court proceedings with respect to such matters arising under the 2015 Master Agreement such as a May 2, 2019 arbitration hearing on a grievance related to the scope of a ratification bonus under the 2015 Master Agreement.

31. Officers and agents of the International Union and Local Unions also routinely and consistently contact Kellogg's labor relations representatives in Battle Creek directly by phone, email, and meet in person, to represent their members in matters that arise at the unionized RTEC facilities, including those arising under and in connection with the 2015 Master Agreement.

32. Representatives for Kellogg, the International Union, and the Local Unions meet at neutral locations to negotiate their voluntary Master Agreements. At the bargaining table, an agent for the International Union leads negotiations on behalf of the Local Unions.

33. Steve Bertelli, then-Vice President of the International Union, served as the chief negotiator for the International Union and the Local Unions during the 2015 Master Agreement negotiations. BCTGM International Vice President Roger L. Miller is currently the Unions' chief spokesperson and agent with respect to the Unions' actions related to negotiations for potential amendments to the 2015 Master Agreement.

### The Unions Fail to Give Timely Notice to Terminate the 2015 Master Agreement

34. The 2015 Master Agreement includes an evergreen clause, which states as follows:

> This Agreement shall become effective as of October 4, 2015 and shall remain in full force and effect until October 5, 2020. The Agreement shall continue in effect without change from year to year thereafter, except that either party to this Agreement who wishes to terminate, amend or modify this Agreement on October 5, 2020, or at the end of any yearly period thereafter, shall give written notice to the other party not less than sixty (60) days prior to the anniversary date of the Agreement.

(**Exhibit 4** at p. 30, Section 10.03.)

35. Neither Kellogg nor any of the Unions provided written notice to terminate the Master Agreement within sixty (60) days before October 5, 2020.

36. The "duration" of the 2015 Master Agreement is governed by Section 10.03 of the 2015 Master Agreement. (**Exhibit 4** at p. 30.)

37. Section 10.03 expressly distinguishes between notice to "terminate" and notice to "amend or modify." Each type of notice has different consequences and effects under the contract language. (*Id.*)

38. If timely notice to "amend or modify" the Master Agreement is provided, negotiations for potential amendments "shall begin not less than thirty (30) days before the

7

[Master Agreement's] anniversary date," but the Master Agreement does not terminate. (*Id.* at p. 30, Section 10.03(b).)

39. If notice to amend the Master Agreement is provided timely and "agreement covering amendments to th[e] [Master] Agreement is not reached" by the Master Agreement's anniversary date, negotiations may continue beyond that anniversary date (October 5, 2020) if "mutually agreeable" by the parties. If the parties fail to reach mutual agreement on amendments, then the 2015 Master Agreement continues without change from year to year unless timely and proper notice to terminate is provided the following year under Section 10.03(a). (*Id.*, Section 10.03(c).)

40. Under prior Master Agreements, which included nearly identical contract "duration" language, the Unions have consistently provided timely express notice to modify <u>and terminate</u> the terms of Master Agreements when they sought to avoid the automatic year-by-year extension.

41. For example, in their July 23, 2015 notice regarding the 2012 Master Agreement, the International Union, on behalf of itself and all Local Unions, gave notice to amend or modify <u>and notice to terminate</u>. The notice stated that, if amendments to the then-existing Master were not reached by the contract expiration/anniversary date, the Master Agreement would terminate. Specifically, the Union's July 23, 2015 notice to terminate stated in relevant part:

> You are hereby notified that the BCTGM for itself and its affiliated Local Unions: Local 3G – Battle Creek, Michigan; Local 50G – Omaha, Nebraska; Local 252G – Memphis, Tennessee; Local 374G – Lancaster, Pennsylvania and, signatories to said Master Agreement, seek to modify <u>or terminate</u> the Master Agreement expiring October 3, 2015.
>
> Should the Union and the Company fail to reach agreement on the terms of a new agreement commencing on October 3, 2015, <u>the</u>

> current Master Agreement shall terminate on its own terms as a matter of law and as a result of this notice.

(**Exhibit 5** (emphasis added).)

42. No such statement or similar termination notice was provided by the International Union or any of the Local Unions at least 60 days prior to October 5, 2020.

43. The Unions' July 20, 2020 notice communication to Kellogg did not state that the 2015 Master Agreement would terminate as a result of the Unions' notice or otherwise; it merely requested to bargain for a potential successor agreement. The Unions wrote in relevant part:

> Pursuant to the provisions of the Labor Management Act of 1947 as amended, the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union and the following local Unions, as certified collective bargaining representatives of your employees, hereby request that you and/or your authorized representative(s) meet with the BCTGM Kellogg Master Contract Bargaining Committee for the propose of bargaining a successor Agreement to the Master contract expiring October 5, 2020 . . . .

(**Exhibit 6**.)

44. Under established and controlling law, a notice to terminate "must be clear and explicit" and a "notice of modification is not a notice of termination and does not affect termination of the contract." *E.g., Office & Professional Employees Int'l Union v. UAW Local 174*, 524 F.2d 1316 (6th Cir. 1975); *IUOE Local No. 181 v. Dahlem Constr. Co.*, 193 F.3d 470 (6th Cir. 1951); *see also Motor Carriers Council of St. Louis v. Teamsters, Local 600*, 486 F.2d 650 (8th Cir. 1973) (finding notice provided by Union was not a notice to terminate CBA and upholding $6 million judgment against union for striking in violation of no-strike clause).

45. A review of the Unions' July 20, 2020 letter regarding its request to negotiate over amendments for a potential successor Master Agreement confirms that the Unions

9

did not give clear and explicit notice to terminate the 2015 Master Agreement as required by law, as required by the parties' contract, and as the Unions have done in the past.

46.     Kellogg honored the Unions' request to bargain over potential amendments to the 2015 Master Agreement in good faith beginning on September 9, 2020.  The parties met between 12-13 times over the course of four weeks, but were unable to agree upon amendments to their existing 2015 Master Agreement.

47.     Kellogg has informed the Unions, consistent with Section 10.03(c) of the Agreement, that it would voluntarily continue negotiations for possible amendments beyond the October 5, 2020 anniversary date even though it was not required to do so under the Agreement.

### **The Unions' Repudiate and Breach the 2015 Master Agreement**

48.     On September 30, 2020, Kellogg reminded the Unions that, consistent with the Section 10.03, the Master Agreement continued without change for another year after the October 5, 2020 anniversary date because no party gave notice to terminate the Agreement, as had been done in the past.

49.     In response, the Unions informed Kellogg that they disagreed. The Unions refused to recognize a difference between their July 20, 2020 notice and previous notices that they had used when they sought to terminate the Master Agreement.

50.     The Unions have breached and repudiated the 2015 Master Agreement in its entirety, incorrectly stating and taking the position that the 2015 Master Agreement expired on October 5, 2020 and by refusing to honor or follow its terms after October 4, 2020.

51.     On October 2, 2020, the Unions sent Kellogg a letter stating:

> Per Article 10.02 of the RTEC Cereal Master Contract this notice satisfies the 48-hour notification requirement.

10

> Local Unions' [sic] 3G, 50G, 252G, and 374G hereby gives 48-hour notification of intent to Strike, if an agreement is not reached upon expiration of the current RTEC Cereal Master Contact.

(**Exhibit 7**.)

52. The Unions breached the no-strike provisions of the 2015 Master Agreement, including Sections 10.01 and 10.02 by sending Kellogg this October 2, 2020 letter stating a clear intent to strike at all four RTEC facilities on some unspecified time and date after October 4, 2020, and despite the continuation of the Master Agreement without change until at least October 5, 2021. The Unions' October 2, 2020 letter and its actions are in direct violation of Sections 10.01 and 10.02 of the 2015 Master Agreement.

53. The Unions also breached the provisions of the 2015 Master Agreement, including Sections 10.01 and 10.2 by otherwise calling for, supporting, or encouraging employees at each of the RTEC facilities to refuse to work or to strike in violation of the 2015 Master Agreement.

54. Kellogg, through counsel, notified the Unions of this contract breach on October 3, 2020, requested that the Unions rescind the notice and provided assurances from the Unions that no strikes or work stoppages would be called, sanctioned, or supported by the Unions. Kellogg also requested that the Unions take steps to prevent a strike or work stoppage in violation of the parties' Master Agreement. (**Exhibit 8**.)

55. The Union refused to rescind the strike notice and refused to provide the requested assurances, continuing its actions in direct violation of the 2015 Master Agreement.

## COUNT ONE – BREACH OF CONTRACT UNDER SECTION 301

56. Kellogg realleges and reincorporates the previous paragraphs in this Complaint as if fully set forth herein.

57. The 2015 Master Agreement constitutes an enforceable labor contract between Kellogg, the International Union, and the Local Unions, under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

58. By repudiating and refusing to honor the terms of the 2015 Master Agreement, the Unions have breached and violated the 2015 Master Agreement.

59. Section 10.01(a) of the 2015 Master Agreement prohibits strikes or lockouts during its term. It provides:

> During the life of this Master Agreement no strike or work stoppage in connection with disputes arising hereunder shall be cause or sanctioned by the International Union, any of the Local Unions or by any member thereof; and no lockout shall be ordered by the Company in connection with such disputes.

(**Exhibit 4** at p. 29.)

60. Section 10.02 further confirms that no strike or work stoppages may be called, sanctioned or supported during the term of the Master Agreement. It only permits the Unions to give 48-hour notice of a strike or work stoppage after the 2015 Master Agreement expires and requires the Unions to identify when any such post-expiration strike or work stoppage would take effect. Section 10.02 states:

> If, <u>upon termination of this Agreement</u> or any of the respective Supplemental Agreements, the Local Union at that plant decides to engage in a strike or work stoppage or the Company decides to engage in a lockout, the party deciding to engage in such action at that plant will provide forty-eight (48) hours advance notice before the strike, work stoppage or lockout is to be effective.

(*Id.* at p. 29 (emphasis added).)

61. The International Union and each of the Local Unions have breached and violated Section 10.01(a) by repudiating the 2015 Master Agreement, by sending their October 2,

2020 written strike notice, and by threatening, sanctioning, supporting and/or calling for Kellogg RTEC employees to strike and/or engage in work stoppages in violation of Sections 10.01(a).

62. The Union's October 2, 2020 notice and actions also violate Section 10.02 of the Master Agreement not only because the 2015 Master Agreement has not terminated, but also because it fails to comply with the 48 hour notice requirements or to provide an effective date and time for the unlawful strike or work stoppage. Even if such a unlawful strike were permitted, which it is not, this failure to comply with the notice requirements has caused significant damages to Kellogg, including but not limited to contingency planning costs, business disruption, and economic damages.

63. As a direct result of the International Union's and the Local Unions' multiple and continuing contract violations, Kellogg has suffered and will continue to suffer significant economic damages and irreparable harm

64. The Unions' actions are not only willful breaches and violations of the parties' labor contract, but they are also being carried out for unlawful purposes, including for the purpose of damaging and disrupting Kellogg's business.

## COUNT TWO – DECLARATORY JUDGMENT

65. Kellogg realleges and reincorporates the previous paragraphs in this Complaint as if fully set forth herein.

66. By its actions described above, Defendants have repudiated entirely the terms of the parties' enforceable 2015 Master Agreement and deprived Kellogg of the benefits of its negotiated bargain for an agreement covered by Section 301 of the Labor Management Relations Act.

67.　Kellogg has suffered, and continues to suffer, damages as a result of the International Union's and each Local Union's repudiation, breaches, and failure to abide and follow the terms of the 2015 Master Agreement.

68.　To avoid injustice and to enforce binding labor agreements under federal law, the Court should enter an order and judgment declaring the 2015 Master Agreement enforceable and in effect until at least October 5, 2021 and directing that Defendants cease their contract violations and comply with its terms, including but not limited, with the no-strike provisions in Section 10.01(a).

## **PRAYER FOR RELIEF**

Wherefore, Kellogg respectfully requests that the Court enter orders and judgment in its favor and against the International Union and the Local Unions as follows:

A.　Enter judgment that the International Union and the Local Unions repudiated, breached, and violated the 2015 Master Agreement;

B.　Award damages in an amount to be determined arising out of the International Union's and the Local Unions' breaches of the 2015 Master Agreement;

C.　Enter a declaratory judgment that the 2015 Master Agreement is an enforceable labor agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C 185, and continues in full force and effect without changes until at least October 5, 2021;

D.　Enter an order directing that the International Union and Local Unions abide by all of the terms of the 2015 Master Agreement, including but not limited to, the no-strike provisions in Section 10.01(a), and requiring Defendants to take all actions necessary to prevent and cease any strikes or work stoppages caused, sanctioned, planned, called, or occurring.

E. Award Kellogg punitive damages;

F. Award Kellogg all of its legal fees and other costs incurred and filing and prosecuting this action; and

G. Order all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

Respectfully submitted,

MILLER JOHNSON
Attorneys for Plaintiff, Kellogg Company

Dated: October 3, 2020         By :   */s/ Patrick M. Edsenga*
David M. Buday (P43087)
Keith E. Eastland (P66392)
Patrick M. Edsenga (P74593)
  Radisson Plaza Hotel & Suites
  100 W. Michigan Avenue, Suite 200
  Kalamazoo, MI 49007-3960
  Telephone:  (269) 226-2950
  budaym@millerjohnson.com
  eastlandk@millerjohnson.com
  edsengap@millerjohnson.com

## Verification of Complaint

    I, Jeffrey Canfield, declare that I am employed by Kellogg Company as its Corporate Counsel – Labor and Employment, that I have read the Verified Complaint and know the contents thereof, and that the same are true and correct to the best of my knowledge. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 3, 2020                            _____
                                                                        Jeffrey Canfield